Gaston, Judge.
We have delayed the decision of this cause, in the hope of being able, with satisfaction to ourselves, to settle questions of great public interest involved *31 jji it; viz. the existence in this state, and if it exist, the extent of the rule, that the vendor of land has a lien thereon for the unpaid purchase money. The case of Wynn v. Alston, 1 Dev. Eq. Ca. 163, has been generally considered as establishing that the vendor here has a lien against the vendee, and against volunteers and purchasers under him with notice, and that it was’ so established by the adjudication of Judge Ham, and Judge Henderson against the dissenting opinion of Chief Justice Tayeor. From the published report it appears, that Judge Ham and the Chief Justice respectively filed opinions, and as none was filed by Judge Henderson, and as it 'was known that the decree for the plaintiff could not have been rendered without his sanction, it was a natural inference that he concurred for the reasons stated by Judge Ham. It was known, however, to some of the individuals who now constitute the Court, that there is reason to doubt whether this inference be correct. Some years after the decision of Wynn v. Alston there came on for hearing the case of Kelly v. Perry, in which the plaintiff set up the lien, and founded upon it her claim to relief. In the argument the defendant’s counsel admitted the general doctrine of the vendor’s lien as supposed to be established in Wynn v. Alston, but contended, that it did not apply to the case then under consideration. Judge Henderson remarked from the bench, that the rule was not established in that case, as supposed, for that although he concurred with the decision, his judgment had rested upon other grounds than those taken by Judge Ham. The bill in Kelly v. Perry, was dismissed, and the judgment of the Court, as delivered by Judge Ham, seems to admit, that, the rule was not yet settled. “ How far (I take the words from the opinion,) the vendor of land has a lien on the purchase money in the hands of the purchaser from the vendee with notice, need not be the subject of examination'in this case, because it does not appear that anything was due from Taylor (the vendee) to the plaintiff as part of the purchase money.*” *32 Under these circumstances we were solicitous to examine the record in Wynn’s Case, to see the allegations, the proofs and the decree, and thus satisfy ourselves what were the points authoritatively decided by it. But with every exertion on our part, and on the part of the officers of the Court, we have been unable to do so. In the conflagration of the State-house, the books and papers of the clerk’s office were saved as they could be — in much hurry and confusion ; and although it is believed that none were actually destroyed, yet they were so scattered, that one . book of our records and the original papers in some of the suits are yet missing. A hope is indulged, that these will yet be obtained, but we do not think ourselves justified in postponing any longer on that account the decision which the parties to this controversy have a right to require.
The case of Wynn v. Alston, X Dev. Eq. Ca. 163, examined and doubted upon the authority of Kelly v. Perry, MS.
*32 . On the general question, whether this doctrine of lien ought to be considered as a part of the equity jurisprudence of North Carolina, we all of us feel the force of the argument in the dissenting opinion of Chief Justice Taylor. It is difficult to resist it, especially when we see the “ inconvenient state,” to adopt the language of Lord Eldon, in Mackwreth v. Simmons, 15 Vesey, 350, in which this doctrine, after all the corrections and improvements it has received in England, has ultimately placed the titles to lands in that country. Whether there be or be not a lien; whether the purchaser from the vendor be or be not liable for the original purchase money, is not there a “ dry question,” depending upon the existence or non-existence of any fact, but depends upon the peculiar circumstances of each case, accordingly as these circumstances may induce the Court to infer, either that the lien was intended to be reserved to the vendor, or that credit was given, and ■exclusively given, to the vendee. A doctrine leading to such results ought to be well considered before it is adopted, or if already adopted, should, if possible, be well guarded, lest it should be followed by the same consequences. But upon this question, the rules by which it is our duty to be guided, are exceedingly different, accordingly as the doctrine may or may not have been sanctioned by our predecessors. An adjudication by them is a pre *33 cedent which we are bound to regard as evidence of the law, unless it can be conclusively shown to be erroneous, and by which we must be guided éven when so shown, if a departure from it occasions greater public inconvenience than the error itself. Where there is no such precedent, we then ascertain the true rule by the deductions of reason from settled principles. After several conferences, we are unable to agree upon this general question, and as a determination of it is unnecessary in the present case, we must leave it, reluctantly leave it, in the state in which we find it.
A purchaser at a sale by a guardian, made by order of the County-Court, under the act of 1789, {Rev. ch. 312, 55,) has the rights of a purchaser under execution.
If we should attempt to decide this case, (supposing the doctrine of lien to exist here,) by Lord Eldon’s rule— drawing from the peculiar circumstances of the transaction an inference that the lien was intended' to be reserved to the vendor, or the opposite inference, that credit was intended to be given exclusively to the vendee — it is questionable, at least, whether there would be more harmony in opinion, than there is on the general question.
There is, however, one point - in the case upon which there is no difference of sentiment among the members of the Court. Whatever may be the lien as between vendor and vendee, or between vendor and volunteers or purchasers with notice under the vendee, we deny its existence against creditors enforcing the collection of debts by legal process. If a vendor claiming such a lien will not reduce it to a legal form, and give it the notoriety of registration, which our laws require for the validity of legal liens, it cannot prevail against creditors. Purchasers under execution sales represent creditors, and buy all that the creditor has a right to sell. The purchaser in this case is to be considered as a purchaser under a sale by execution. The sale was made by order of the Court, under the fifth section of the act of 1789, for the satisfaction of creditors, and the proceeds thereof are assets in the guardian’s hands for the benefit of creditors, and the purchaser at such a sale necessarily represents these creditors.
The plaintiff is evidently not pursuing these assets, as she has not filed her bill against the vendee’s heirs for any surplus after paying debts, but against the purchaser at *34 the judicial sale. She asks that the sale so made in order to satisfy creditors should be declared null, so far as it affects her equitable lien upon the thing sold. This would . , ,. . .. be in effect to set up such a lien against creditors.
The decree below is to be reversed, and the plaintiff’s bill dismissed with costs in both Courts.
Per CuRiam. Decree below reversed.

 The reporters have re-examined the opinion of Judge Ham,, in Kelly v. Perry, ’and believe, with the exception of the above quotation, he confines himself to the question of fact, whether Taylor, the vendee of the plaintiff, owed any part of the purchase money: